IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ERIC L. GREEN, on behalf of himself and all others similarly situated,<br><br>   *Plaintiff*,<br><br>   v.<br><br>RENTGROW, INC.,<br><br>   *Defendant*. | Civil Matter No. 1:24-cv-_____<br><br>**CLASS ACTION COMPLAINT**<br><br>**TRIAL BY JURY DEMANDED** |

## I. PRELIMINARY STATEMENT

1. This is a consumer class action brought pursuant to the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. §§ 1681-1681x, seeking relief for Defendant RentGrow, Inc.'s ("Defendant" or "RentGrow") widespread violations thereof.

2. Despite the public availability of court records that conclusively demonstrate that eviction cases have been dismissed, withdrawn, vacated, satisfied, or resulted in judgments for tenants, Defendant routinely fails to obtain up-to-date information pertaining to the disposition of those cases and publishes harmful, misleading, and inaccurate tenant screening consumer reports to landlords and property managers in violation of FCRA section 1681e(b).

3. Defendant should know better. In 2022, the First Circuit Court of Appeals put RentGrow on notice that stale public record information that omits more recent case disposition information is "inaccurate" for purposes of FCRA liability and that RentGrow's failures to "have procedures in place to verify whether the court-records information it received from [its third-party vendor] was either correct or complete" and to "independently spot-check or otherwise review the underlying dockets" could support a jury's finding that it "failed to implement reasonable

procedures to assure maximum possible accuracy" as FCRA section 1681e(b) requires. *McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 97-98 (1st Cir. 2022).

4. Since then, Defendant has not mended its ways. Its public-records practices continue to harm individual consumers seeking rental housing by prejudicing their prospective landlords with inaccurate, adverse information. This, in turn, harms interstate commerce by needlessly damaging consumers' ability to move to secure better housing and/or employment.

## II. JURISDICTION *and* VENUE

5. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

6. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

7. Plaintiff Eric L. Green ("Plaintiff" or "Mr. Green") is an adult individual who resides in Alexandria, Virginia. At all relevant times, Plaintiff was a "consumer" as defined by 15 U.S.C. § 1681a(c).

8. Defendant RentGrow, Inc. ("RentGrow") is a Delaware corporation that maintains its principal place of business in Waltham, Massachusetts and regularly conducts business in Virginia, including the Eastern District of Virginia. At all relevant times, Defendant was a "person" and a "consumer reporting agency" ("CRA") within the meanings of 15 U.S.C. §§ 1681a(b) and (f), respectively.

## IV. FACTUAL ALLEGATIONS

9. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress

2

adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).

10. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

11. "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

12. One of these measures, 15 U.S.C. § 1681e(b), "deal[s] with the procedures consumer reporting agencies must follow when collecting and transmitting information. Congress also gave individuals the right to sue reporting agencies for violations of FCRA. *Id.* § 1681e(b) sets forth the CRAs' overall duty:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke*, at *4.

13. The eviction information Defendant acquires is merely a summary that does not include all the information or the most up-to-date information available at the courthouses or government offices where the records themselves are housed in conjunction with the day-to-day functioning of those entities.

14. Defendant knows that its public record vendor provides it with eviction data that is sometimes stale and outdated and that it is required to do more than simply pass along what it receives from its vendor to its customers. *See McIntyre,* 34 F.4th at 97-98.

15. Indeed, the First Circuit Court of Appeals noted that

> For one thing, RentGrow's reliance on [its third-party vendor] for court-records information resulted in a not insignificant number of disputes over a two-year period (from October of 2016 through October of 2018): 6,194 disputes out of 272,893 tenant-screening reports containing court-records information. This means that roughly 2.3 percent of the reports were disputed — and many of those disputes appear to have been successful in securing corrections. Of 2,953 disputes containing eviction-litigation records (a subset of court-records information), 2,526 resulted in corrections of some sort.

*McIntyre*, 34 F.4th at 98.

16. Notwithstanding its awareness of thousands of inaccuracies in its tenant screening reports, Defendant failed to apprise itself of the procedures by which its public records vendor collects its court-records information and what procedures it had in place to ensure the accuracy of that data. *Id*. at 91.

17. Moreover, Defendant did not itself review civil court filings, dockets, or other court records prior to including public record information in its tenant screening reports. *Id*. at 97.

18. Defendant has continued to bury its head in the sand. Fully aware of the problems associated with the incomplete and inaccurate evictions data that it acquires from its vendor, Defendant continues to report inaccurate information about landlord tenant lawsuits to potential landlords via its tenant screening reports, as it did in Plaintiff's case.

19. The data and tenant screening reports Defendant sells are used and expected to be used for multiple purposes governed by FCRA section 1681b and the information included in them bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of each respective consumer. Thus, the tenant screening reports that Defendant sells to

landlords and property managers about thousands of consumers each year are "consumer reports" within the meaning of FCRA section 1681a(d).

20. Defendant does not maintain reasonable procedures designed to assure maximum possible accuracy of the eviction information in the reports it sells because it does not supervise its vendor or learn about its procedures for obtaining public record information or independently spot-check the records it obtains against the public record itself. Instead, it abdicates all responsibility for the accuracy of the information it includes in tenant screening report to its vendor. As a result of this established policy and practice, Defendant's tenant screening reports regularly include inaccurate and out-of-date civil court information pertaining to judgments that have been dismissed, withdrawn, satisfied, or have otherwise been resolved in a manner favorable to the tenant applicant who is the subject of Defendant's tenant screening report.

21. Defendant's practices not only violate the FCRA as a matter of law, they exact serious consequences on rental housing applicants and interstate commerce, causing widespread harm to consumers.

22. At all times relevant to Plaintiff's allegations, information pertaining to matters filed in the County Court for El Paso County, Colorado, including full case dockets and digital representations of all non-confidential documents filed in such cases, including, but not limited to complaints, judgments, vacaturs, withdrawals, and satisfactions of judgment, were publicly available online.

23. At all times relevant to Plaintiff's allegations, Defendant did not conduct any independent review of civil court records prior to preparing a tenant screening report, but rather included whatever information its vendor provided in response to a query about a specific tenant applicant.

24. Under the appropriate circumstances, the Fourth Circuit Court of Appeals has found that a class action under n FCRA section 1681e(b) concerning a CRA's use of stale public record information may be certified under Rule 23. *See Soutter Equifax Info. Servs., LLC*, 498 F. App'x 260, 265 (4th Cir. 2012); *see also Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183 (E.D. Va. 2015) (certifying class).

*Plaintiff's Experience*

25. Plaintiff was living in the greater Denver, Colorado area when he procured new employment with Peraton, Inc., a cybersecurity defense contractor with its headquarters in Reston, Virginia.

26. Plaintiff's new employment would require him to move to northern Virginia for in-person work at the Reston, Virginia offices of Peraton.

27. In early 2024, Plaintiff moved to northern Virginia, living with family members while he began working at his new employer and searched for apartments for his new living arrangement.

28. On March 2, 2024, Plaintiff applied to rent an apartment at Windsor Kingstowne, an apartment complex located in the Eastern District of Virginia in Alexandria, Virginia. A Windsor Kingstowne representative obtained a tenant screening report (the "March 2 Report") about Plaintiff from Defendant for a fee.

29. Consistent with its practices and procedures described above, Defendant requested civil court record information about Plaintiff from its vendor and included it in the tenant screening report under the heading "Premium National Civil Court Records Search."

30. The March 2 Report included an inaccurate and out-of-date item of civil court record information purportedly pertaining to Plaintiff, published to an apartment complex located in the Eastern District of Virginia.

31. The inaccurate and out-of-date item appeared, in relevant part, as follows:

```
Court: COLORADO SPRINGS
Case #: 2019C049242
Plaintiff: STAR OASIS LLC
Address: 1370 FARNHAM PT 104, COLORADO SPRINGS CO 80904
Defendant: GREEN, ERIC
Filing Date: 12/31/2019
Amount: 0.00
Judgement: PLAINTIFF
Judgement Date: 12/31/2019
```

32. This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case 2019C049242 (El Paso County, Colorado) on December 18, 2019 was "vacated" on March 12, 2020, when an order granting a motion to vacate judgment and dismiss without prejudice, filed by the landlord in that matter, was filed on the publicly publicly-available case docket.

33. The March 2 Report contained no reference to the March 12, 2020 vacatur and dismissal.

34. As of the date of the tenant screening report, March 2, 2024, Defendant had failed to update the status of the March 12, 2020 court order for nearly four years.

35. Plaintiff disputed the item with RentGrow, who used a vendor, Contemporary Information Corp. ("CIC"), to conduct the investigation into the dispute. CIC investigated and returned a report to RentGrow dated March 2, 2024, clearly indicating "No Housing Court Records Found."

36. On March 6, 2024, Plaintiff applied to a different apartment complex, also located in the Eastern District of Virginia, named eLofts, also in Alexandria, Virginia. The eLofts apartment complex had recently lowered its monthly rent prices, which attracted Plaintiff to this

property. As part of the application, an eLofts representative obtained a tenant screening report (the "March 6 Report") about Plaintiff from Defendant for a fee.

37. Plaintiff received a letter dated March 6, 2024 from eLofts indicating that his rental application was denied, with the reason listed as "Civil Court History Does Not Meet Property Requirements." The letter indicated that the information was contained in a tenant screening report provided to eLofts by Defendant RentGrow, Inc.

38. The content of the March 6 report, under the section labeled "Premium National Civil Court Records Search" was identical to that included in the March 2 report.

39. Plaintiff again disputed the incorrect and out-of-date information.

40. CIC delivered another report to Defendant a report on March 6, 2024, also clearly indicating "No Housing Court Records Found."

41. Defendant then sent an email to Plaintiff on March 8, 2024, requesting that he complete a dispute form, but it is unclear which report this dispute applied to, the March 2 or the March 6 report.

42. Plaintiff completed the dispute form, and an email dated March 11, 2024 titled "Notice of Dispute" indicates that Defendant's Investigation Department had opened a new dispute regarding Mr. Green.

43. On March 26, 2024, Mr. Green received an email with the results of the investigation, showing the March 2, 2024 report from CIC containing the advice "No Housing Court Records Found," as well as a case docket of the El Paso County, Colorado case, showing the March 12, 2020 dismissal without prejudice order.

44. Plaintiff immediately forwarded the email providing results of the investigation to a representative of the eLofts property. But the Assistant Community Manager was unable to find

any dispute, update or correction related to the inaccurate RentGrow report for Mr. Green in connection with the application for eLofts.

45. After an additional four weeks of not receiving any results relating to his eLofts tenant application, Mr. Green disputed the accuracy of the report directly to CIC again on April 23, 2024.

46. Frustrated with inaction by either RentGrow or CIC and unable to complete a lease on an apartment in northern Virginia, Plaintiff also filed a complaint with the Consumer Financial Protection Bureau ("CFPB") in Washington, D.C. on April 28, 2024.

47. As a result of Defendant's actions, Plaintiff suffered a loss of time and resources, a significant delay in obtaining an apartment and related expenses, as well as harm to his reputation.

48. At all times pertinent hereto, Defendant's conduct was a result of deliberate policies and practices, was willful, and was carried out in reckless disregard for a consumers' rights as set forth under FCRA section 1681e(b).

49. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff" and a failure to make the correction right away. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008). Further, a lack of any internal procedures to anticipate or prevent inaccuracy is willful. *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 249–50 (4th Cir. 2017).

50. The FCRA sections at issue here, and informative guidance, have been around now for over 50 years. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

51. Defendant further assumed an unjustifiably high risk of harm when it failed to meaningfully alter its policies and practices after the First Circuit Court of Appeals 2022 decision in *McIntyre v. RentGrow*, which placed it on notice that its procedures for assuring the maximum possible accuracy of information it includes in its tenant screening reports may be unreasonable.

## V. CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action on behalf of the following Class and Subclass for Defendant's violations of FCRA sections 1681e(b) and 1681i(f):

*Unreasonable Procedures Class*

For the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the Court's class certification Order, all natural persons with an address in the United States and its Territories about whom who Defendant prepared a tenant screening report that contained public record information about an eviction action but failed to state that the action had been withdrawn, dismissed, non-suited, or resulted in a judgment in favor of the subject of the report according to publicly available court records.

*Post-Dispute Publication Subclass*

For the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the Court's class certification Order, all natural persons with an address in the United States and its Territories (1) from whom Defendant received a dispute of the completeness and/or accuracy of public record information in a tenant screening report previously prepared by Defendant; (2) with respect to which dispute Defendant received a notification from CIC that the disputed information did not exist in the public record, was incomplete, out-of-date, or otherwise inaccurate; and (3) about whom Defendant prepared another tenant screening report that contained the disputed information after receiving its vendor's notification.

*Dispute Class*

    For the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the Court's class certification Order, all natural persons with an address in the United States and its Territories (1) from whom Defendant received a dispute of the completeness and/or accuracy of public record information in a tenant screening report previously prepared by Defendant; (2) with respect to which dispute Defendant received a notification from CIC that the disputed information did not exist in the public record, was incomplete, out-of-date, or otherwise inaccurate; and (3) from whose files Defendant failed to correct or delete the incomplete, out-of-date, or otherwise inaccurate.

53. The members of the Classes and Subclass are so numerous that joinder of all members is impracticable. Although the precise number of Classes and Subclass members is known only to Defendant, Plaintiff avers upon information and belief that they number in the thousands. Defendant sells eviction record information purchased from its single vendor to thousands of businesses throughout the country, and its tenant screening reports are standardized, form documents, produced pursuant to uniform practices and procedures.

54. There are questions of law and fact common to the Classes and Subclass that predominate over any questions affecting only individual Classes and Subclass members. The principal question concerns whether Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' reports with respect to eviction records that had been withdrawn, dismissed, non-suited, or resulted in a judgment in favor of the subject of the report at least 30 days prior.

55. Plaintiff's claims are typical of the claims of the members of the Classes and Subclass, which all arise from the same operative facts and are based on the same legal theories.

56. Plaintiff will fairly and adequately protect the interests of the members of the Classes and Subclass. Plaintiff is committed to vigorously litigating this matter and has retained

counsel experienced in handling consumer class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

57. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes and Subclass would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes and Subclass, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

58. Whether Defendant violated the FCRA can be determined by examination of Defendant's policies and conduct, its business records, and publicly available civil court records.

59. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' and Subclass's claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes and Subclass may be derived from Defendant's records.

### VI. CLAIMS *for* RELIEF

#### COUNT I

On behalf of Plaintiff, the Unreasonable Procedures Class,
and the Post-Dispute Publication Subclass
for Defendant's violation of FCRA section 1681e(b)

60. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61. Defendant negligently and/or willfully failed to follow reasonable procedures to assure maximum accuracy of eviction record information it included in tenant screening reports it prepared about Plaintiff and members of the Class and Subclass, thereby publishing harmful, inaccurate and outdated eviction record information to their potential landlords and/or property managers, in violation of FCRA section 1681e(b).

62. Accordingly, Defendant is liable to Plaintiff and members of the Unreasonable Procedures Class and the Post-Dispute Publication Subclass for the relief available in FCRA sections 1681n and 1681o.

## COUNT II

On behalf of Plaintiff and the Dispute Class
for Defendant's violation of FCRA section 1681i(a)

63. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

64. Upon receipt of a dispute of information that it included in a tenant screening record about Plaintiff and members of the Dispute Class, Defendant negligently and/or willfully failed to perform a reasonable reinvestigation of the disputed information and to update or remove the inaccurate information from his file.

65. Accordingly, Defendant is liable to the Plaintiff and members of the Class and Subclass for the relief available in FCRA sections 1681n and 1681o.

## VII. **JURY TRIAL DEMAND**

66. Plaintiff demands trial by jury on all issues so triable.

## VIII. PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays this Honorable Court enter an order granting the following relief:

    A.    certifying the proposed Class under Federal Rule of Procedure 23 and appointing Plaintiff and his counsel to represent the Class;

    B.    declaring that Defendant's conduct as alleged is in violation of the FCRA;

    C.    awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

    D.    awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

    E.    awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    F.    awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

    G.    and granting such other and further relief as may be just and proper.

Dated:    June 25, 2024    Respectfully submitted,

**ERIC L. GREEN**, by his attorneys,

By: */s/ Leonard A. Bennett*
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Drew D. Sarrett, VSB # 81658
CONSUMER LITIGATION ASSOCIATES, P.C.
626 E. Broad Street, Suite 300
Richmond, Virginia 23219
Telephone: (757) 930-3660
Email: drew@clalegal.com

James A. Francis*
John Soumilas*
Jordan Sartell*
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

*Attorneys for Plaintiff and the Classes*

*petition to appear *pro hac vice* forthcoming